**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1864
_____

JEVON EVERETT,
                              Appellant

v.

CORRECTIONAL OFFICER NORT; CORRECTIONAL OFFICER PINDEL;
ALLEGHENY COUNTY JAIL; SERGEANT MOORE, Captain, (Staff);
SERGEANT RUBEL, (Staff); SERGEANT KENGERSKI; SERGEANT
COULTER; CORRECTIONAL OFFICER CHROINSTER; WARDEN
RAMON RUSTIN; ALLEGHENY CORRECTIONAL HEALTH SERVICES, INC.

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2:10-cv-00561)
District Judge:  Honorable Arthur J. Schwab
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 1, 2013

Before:  SMITH, GARTH and ROTH, Circuit Judges

(Opinion filed: November 21, 2013)
_____

OPINION
_____

PER CURIAM

Pro se Appellant Jevon Everett appeals from an order of the United States District Court for the Western District of Pennsylvania granting summary judgment in favor of the Defendants. For the reasons set forth below, we will affirm in part, vacate in part, and remand for further proceedings.

I.

Everett filed a complaint pursuant to 42 U.S.C. § 1983 alleging that the Defendants violated his constitutional rights while he was awaiting trial at the Allegheny County Jail. On April 13, 2008, jail officials were scanning all detainees' fingerprints for biometric access to the commissary. Everett explained that he would not comply because he did not have commissary privileges and his religion forbids fingerprinting. The correctional officers instructed him to allow his fingerprints to be scanned or he would be sent to the Disciplinary Housing Unit ("DHU") where they would be scanned by force. Everett again declined and officers relocated him to the DHU the following day. Brandyn Seabreeze, another inmate who was also asked to submit his fingerprints, heard a corrections officer tell Everett that they would get his fingerprints "even if we have to beat the shit out of you." Thereafter, Seabreeze witnessed officers spraying mace on Everett and he could hear Everett "pleading with the officers as he was escorted to the fingerprint unit telling them he didn't want commissary and his face and eyes were burning." Seabreeze attests that he "never saw Mr. Everett make any aggressive moves or gestures."

2

The officers subsequently took Everett and placed him in a restraining chair. Everett stated in his declaration that he clenched his fists while he was in the restraint chair after "officer Pindel announced and threatened [him] stating, 'give me your fucking fingers, I'll break every one of them until you give us your fingerprints.'" When Everett would not release his fingers from a closed fist position, the officers used a taser gun on him. According to the officers, Everett was stunned once with the taser for a two-second cycle. According to Everett, he was stunned three times on three different parts of his body, for five-second cycles, until his fingerprints were scanned.[1]

Following the incident, Everett requested medical treatment for his injuries, which he listed as "migraines, a quivering voice box, chest pains, heart pains, wheezing lungs, broken fingers, a hole in buttocks, and PTSD." He received 800 mg of Motrin. Thereafter, he was placed in the DHU.[2] The record evidence shows that Everett declined medical treatment when it was offered on each of the following three days. Everett filed a grievance with respect to the incident[3] and the use of force incident was reported to Internal Affairs, which determined that the use of force was justified.

---

[1] Seabreeze stated that he saw the officers "taze [sic] Mr. Everett repeatedly."

[2] Everett argues that his due process rights were violated during the disciplinary hearing because his witnesses were not called. He presented this argument in opposition to County Defendants' motion for summary judgment and the District Court did not address this claim in its opinion. Pursuant to the due process requirements for disciplinary hearings set forth in Wolff v. McDonnell, 418 U.S. 539 (1974), the prison administration has the discretion to limit the hearing and the witnesses called to protect institutional security. Id. at 566-67. There being no evidence in the record to support Everett's claim, we also decline to address it.

[3] The disposition of the grievance is not in the record. In their summary judgment

Based on these events, on April 23, 2010, Everett filed a complaint pursuant to 42 U.S.C. § 1983 alleging that the Defendants violated his constitutional rights under the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments.[4] Named as defendants were various correctional officers and sergeants of Allegheny County Jail, as well the jail itself ("County Defendants"). Everett's complaint made out two claims: excessive force and failure to provide adequate medical care. On June 14, 2012, Everett filed an amended complaint wherein he named additional correctional officers and Allegheny Correctional Health Services, Inc. ("ACHS").

Defendants moved for summary judgment, arguing in part that they were entitled to qualified immunity and that Everett's claims were barred by the statute of limitations. The District Court found that the statute of limitations had not yet expired at the time that the original complaint was filed.[5] With respect to the amended complaint, there was no

_____

motion, the County Defendants stated conclusively that Everett failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), without any evidentiary support. See 42 U.S.C. § 1997e(a). In response, Everett stated that he never received a response to his grievance. The District Court did not address the issue in granting summary judgment, other than stating that the grievance process tolled the statute of limitations. In this regard, we express no opinion on whether Everett exhausted his administrative remedies. See, e.g., Surles v. Andison, 678 F.3d 452, 457-58 (6th Cir. 2012) (summary judgment precluded in inmate's § 1983 action for failure to exhaust administrative remedies where genuine issues of material fact existed as to whether state inmate exhausted his administrative remedies, and whether prison officials prevented inmate from filing grievances and exhausting his administrative remedies).
[4] The Defendants argue that the complaint was filed on May 4, 2010, the day it was received by the Court. However, under the prison mailbox rule, the complaint is considered to be filed on the date that it was given to prison authorities for mailing. Houston v. Lack, 487 U.S. 266, 270-71 (1988).
[5] Everett alleged that the acts or omissions underlying his claims took place between

indication that ACHS received notice of the lawsuit within 120 days in order for the allegations to "relate back" to the original complaint per Fed. R. Civ. P. 15(c)  The District Court nevertheless addressed Everett's claims on the merits and granted summary judgment in favor of the Defendants on both of Everett's claims.[6]  The District Court concluded that Everett failed to set forth an Eighth Amendment claim against the County Defendants, and thus, did not reach the issue of qualified immunity.  This appeal followed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over the District Court's order granting summary judgment.  See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009).  Summary judgment is proper when, viewing the evidence in the light most favorable to the non-moving party and drawing all inferences in that party's favor, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Id.

## III.

_____

April 13 and 29, 2008.  The District Court concluded that the statute of limitations was tolled pending the exhaustion of the prison grievance system and concluded that the claims in the original complaint were timely.

[6] Everett argues for the first time that the District Court erred in granting summary judgment prematurely before the completion of discovery.  On December 4, 2012, the District Court denied Everett's motion to extend time for discovery because the case was two years old and dispositive motions had been filed.  Everett has not identified that any additional information he seeks would have precluded summary judgment.  Accordingly, the District Court did not abuse its discretion in ruling on defendants' summary judgment motions, notwithstanding any outstanding discovery requests.  See Dowling v. City of

We first address Everett's claim of inadequate medical care. We agree with the District Court that there are no issues of material fact and summary judgment in favor of ACHS was proper.[7] First, Everett has not alleged that ACHS has any policy or practice that resulted in the deprivation of his civil rights, as required by Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1978). Thus, ACHS cannot be held liable under § 1983. Moreover, there is no evidence that ACHS was deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 106 (1976) "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles, 571 F.3d at 330. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 n.2 (3d Cir. 1979) (quotation marks omitted). Although Everett asserts in a conclusory manner that he was not provided with medical care, the record evidence indicates that he was seen the day of the incident and declined medical treatment when it was offered on each of the following three days. Accordingly, we will affirm the District Court's order granting summary judgment in favor of ACHS.

IV.

---

Philadelphia, 855 F.2d 136, 139-41 (3d Cir. 1988).

[7] Because we affirm the District Court's decision on the merits, there is no need to address the statute of limitations issue.

6

Everett also claims that the prison guards used excessive force in obtaining his fingerprints. Eighth Amendment cruel and unusual punishment standards apply to a pretrial detainee's excessive force claim arising in the context of a prison disturbance. Fuentes v. Wagner, 206 F.3d 335, 347 (3d Cir. 2000). The applicable test under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Relevant factors include: (1) the need for force, (2) the relationship between the need and the amount of force used, (3) the extent of injury, (4) the extent of the threat to safety as reasonably perceived by officials, and (5) "'any efforts made to temper the severity of a forceful response.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

The District Court cited a number of cases in support of its conclusion that the Defendants used the taser in a good-faith effort to maintain discipline. In those cases, the victims were violent, aggressive, unruly, or presented an immediate risk of danger to themselves or others, unlike Everett who was restrained at the time and refusing to unclench his fist for fingerprints while prison officers threatened to break his fingers. None of the cases cited by the District Court involved a taser victim who was already restrained. A taser victim's lack of aggressive or threatening behavior troubled the Seventh Circuit in Lewis v. Downey, 581 F.3d 467 (7th Cir. 2009). In that case, Lewis was tased for not rising from his bed when ordered to do so. The Lewis Court vacated the grant of summary judgment in favor of defendant, concluding that a reasonable jury

7

could find that the officer did not use the taser in good faith and therefore inflicted cruel and unusual punishment. Id. at 478; see also Hickey v. Reeder, 12 F.3d 754, 758-59 (8th Cir. 1993) (reversing the District Court's judgment in favor of defendants on plaintiff's Eighth Amendment claim when he alleged that a stun gun was used to force him to sweep his prison cell). Moreover, contrary to the District Court's opinion here, the Court in Lewis held that the use of the taser gun was not de minimis application of force. Lewis, 581 F.3d at 475.

Everett's declaration and witness statements reflect that the officers threatened him and he was restrained at the time the officers used the taser on him, and according to Everett, they used it three times. There is no evidence that Everett was acting violently at the time he was in the restraint chair; he simply refused to open his fist. Moreover, while there is no record evidence detailing that Everett suffered serious injury, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury." Hudson, 503 U.S. at 4. Although the officers present a different account of the incident and Internal Affairs determined that the use of force was justified, summary judgment is not appropriate if "'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain.'" Brooks, 204 F.3d at 106 (quoting Whitley, 475 U.S. at 322).

We conclude that there is a genuine issue of material fact as to "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." Hudson, 503 U.S. at 7. The evidence relied upon by the District Court may raise questions about Everett's version of the events, but "at the summary judgment stage, a court may not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder." Boyle v. Cnty. of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998). Were the jury to believe Everett's contentions, it could adduce that the officers did not use the taser in good faith to maintain or restore discipline and find in his favor.

We thus conclude that summary judgment was not warranted on Everett's excessive force claim.[8]

V.

For the reasons set forth above, we will affirm the District Court's order granting summary judgment in favor of ACHS.[9] We will vacate the District Court's order

---

[8] The County Defendants claim here, as they did below, that they are entitled to qualified immunity. They assert their position in a footnote, without argument. Because we have determined that a material fact exists with respect to the County Defendants' good faith use of the taser, summary judgment is not appropriate on the basis of qualified immunity. See Giles, 571 F.3d at 327-28 (where material fact existed as to whether the inmate had ceased resisting at the point he was kicked, summary judgment was improper on the basis of qualified immunity).

[9] ACHS filed a motion for leave to file Everett's medical records under seal. The District Court granted a similar motion below. We have recognized the important privacy interest in one's medical records. Doe v. Delie, 257 F.3d 309, 315 (3d Cir. 2001). The right to privacy is a consideration in the balancing process that courts conduct in deciding whether to file a document under seal. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786-87 (3d Cir. 1994). In light of the District Court's treatment of the medical records and because in this instance, the right to privacy outweighs the public's right of access to materials filed in litigation, we grant ACHS' motion for leave to file Everett's medical records under seal.

granting summary judgment in favor of the County Defendants on Everett's excessive force claim and remand for further proceedings.